# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MANUSZAK, individually and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>BENJAMIN C. ESTY, THOMAS E. FAUST, JR., ALLEN R. FREEDMAN,<br>WILLIAM H. PARK, RONALD A. PEARLMAN, HELEN FRAME PETERS, HEIDI L. STEIGER, LYNN A. STOUT, RALPH F. VERNI, NORTON H. REAMER, EATON VANCE MANAGEMENT, EATON VANCE CORPORATION, EATON VANCE TAX-ADVANTAGED GLOBAL DIVIDEND INCOME FUND, and JOHN AND JANE DOES 1-100,<br>    Defendants.<br>            . | Civil Action No. 10-11046-WGY |

# MEMORANDUM OF LAW OF DEFENDANTS THE INDEPENDENT TRUSTEES AND EATON VANCE TAX-ADVANTAGED GLOBAL DIVIDEND INCOME FUND IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

GOODWIN PROCTER LLP

Stuart M. Glass (BBO # 641466)
Stacey B. Ardini (BBO #663161)
53 State Street
Boston, MA 02109
(617) 570-1000

Mark Holland
Mary K. Dulka
Erin M. Eckhoff
The New York Times Building
620 Eighth Avenue
New York, NY  10018
(212) 813-8800

*Attorneys for the Independent Trustee
Defendants and the Fund*

## Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF PLAINTIFF'S ALLEGATIONS .......................................................................2

    A.    The Parties ............................................................................................... 2

    B.    Plaintiff's Allegations ............................................................................... 3

ARGUMENT .................................................................................................................................5

I.  THERE IS NO FEDERAL JURISDICTION OVER PLAINTIFF'S CLAIMS ............................5

    A.    Plaintiff's Claims About the Fund's Common Shares and ARPS Concern "Covered Securities".................................................................................. 6

    B.    Plaintiff's Claims Relate to the Internal Affairs and Governance of the Fund.......... 7

    C.    Plaintiff's Claims Involve Rights and Duties Relating to the Fund's Securities................................................................................................ 9

II.  PLAINTIFF'S CLAIMS MUST BE BROUGHT DERIVATIVELY ON BEHALF OF THE FUND, RATHER THAN DIRECTLY .......................................................................................11

    A.    Under Massachusetts Law, Direct Claims Are Limited to Injuries Distinct from the Corporation.............................................................................. 11

    B.    Plaintiff's Claims Here Do Not Allege Any Injuries Distinct From the Fund ........ 15

    C.    Plaintiff's Complaint Should Be Dismissed For Failure To Make A Demand On The Fund's Board................................................................................ 16

CONCLUSION.............................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*Blasberg v. Oxbow Power Corp.*,
 934 F. Supp. 21 (D. Mass. 1996) ....................................................................... 12-13

*Brady v. Denton County Elec. Coop., Inc.*,
 2009 WL 3151177 (E.D. Tex. Sept. 28, 2009) ..........................................................8

*Carmona v. Bryant*,
 2006 WL 1043987 (D. Idaho Apr. 19, 2006) ....................................................9, 10

*Daily Income Fund, Inc. v. Fox*,
 464 U.S. 523 (1984)...................................................................................................18

*Doucot v. IDS Scheer, Inc.*,
 2010 WL 3191771 (D. Mass. Aug. 10, 2010) ...........................................................4

*In re Eaton Vance Mutual Funds Fee Litig.*,
 380 F. Supp. 2d 222 (S.D.N.Y. 2005),
 *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*,
 481 F.3d 110 (2d Cir. 2007)..............................................................12, 14, 15

*Ferrell v. Express Check Advance of SC LLC*,
 591 F.3d 698 (4th Cir. 2010) .....................................................................................9

*In re Franklin Mutual Funds Fee Litig.*,
 388 F. Supp. 2d 451 (D.N.J. 2005) ..........................................................12, 14-15

*Genton v. Vestin Realty Mortgage II, Inc.*,
 2007 WL 951838 (S.D. Cal. Mar. 9, 2007) ............................................................10

*Gonzalez Turul v. Rogatol Distributors, Inc.*,
 951 F.2d 1 (1st Cir. 1991)........................................................................................16

*Green v. Nuveen Advisory Corp.*,
 186 F.R.D. 486 (N.D. Ill. 1999)......................................................12, 13, 14, 15

*Harhen v. Brown*,
 431 Mass. 838, 730 N.E.2d 859 (Mass. 2000).......................................................16

*ING Principal Protection Funds Derivative Litig.*,
 369 F. Supp. 2d 163 (D. Mass. 2005) .....................................................................17

*Instituto de Prevision Militar v. Merrill Lynch*,
 546 F.3d 1340 (11th Cir. 2008) .................................................................................7

*Jackson v. Stuhlfire*,
    28 Mass. App. Ct. 924, 547 N.E.2d 1146 (Mass. App. Ct. 1990) ........................................12

*Johnston v. Box*,
    453 Mass. 569, 903 N.E.2d 1115 (Mass. 2009)................................................................17

*Kurz v. Fidelity Management & Research Co.*,
    2007 WL 2746612 (S.D. Ill. Sept. 18, 2007)................................................................6

*McDermott Inc. v. Lewis*,
    531 A.2d 206 (Del. 1987) ................................................................................7-8

*Olesh v. Dreyfus Corp.*,
    1995 WL 500491 (E.D.N.Y. Aug. 8, 1995)................................................................11

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005) ................................................................*passim*

*In re Textainer Partnership Sec. Litig.*,
    2005 WL 1791559 (N.D. Cal. July 25, 2007)................................................................7, 8, 9

*Williams v. Texas Commerce Trust Co. of New York*,
    2006 WL 1696681 (W.D. Mo. June 15, 2006) ................................................................10, 11

*Yameen v. Eaton Vance Distributors, Inc.*,
    394 F. Supp. 2d 350 (D. Mass. 2005) ................................................................17

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 77b(a)(1)................................................................................................5

15 U.S.C. § 77p(f)(3) ................................................................................................6

15 U.S.C. § 77r(b)................................................................................................6, 7

15 U.S.C. § 78bb(f)(5)(E) ................................................................................................5, 6

15 U.S.C. § 78p(f)(3) ................................................................................................5, 6

15 U.S.C. § 80a-2(a)(19)................................................................................................3

15 U.S.C. § 80a-35(a) ................................................................................................13

28 U.S.C § 1332(d)(2)(A)................................................................................................1, 5

28 U.S.C § 1332(d)(9) ................................................................................................5, 7

28 U.S.C. § 1332(d)(9)(A) ...........................................................................................6

28 U.S.C. § 1332(d)(9)(B) ....................................................................................7, 8, 9

28 U.S.C. § 1332(d)(9)(C) ..............................................................................9, 10, 11

28 U.S.C. § 1453(d) ...................................................................................................5

Fed. R. Civ. P. 12(b)(1)..............................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 4

Fed. R. Civ. P. 23.1.................................................................................1, 16, 17, 18

Mass. Gen. Laws, ch. 156D, § 7.42 .........................................................................17

Mass. Gen. Laws, ch. 182 ........................................................................................17

William M. Fletcher, *Fletcher Cyclopedia of Corporations* § 5915 (perm. ed. 1993)............13-14

Defendants Benjamin C. Esty, Allen R. Freedman, William H. Park, Ronald A. Pearlman, Heidi L. Steiger, Lynn A. Stout, Ralph F. Verni and Norton H. Reamer (together, the "Independent Trustees") and Eaton Vance Tax-Advantaged Global Dividend Income Fund (the "Fund") submit this memorandum in support of their motion, pursuant to Rules 12(b)(1), 12(b)(6), and Rule 23.1 of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint with prejudice.

## PRELIMINARY STATEMENT

Plaintiff has brought this putative class action on behalf of the Fund's common shareholders against the Fund's Trustees, the Fund, its investment adviser, Eaton Vance Management ("EVM"), and affiliated entities.  According to the Complaint, in 2008 Defendants caused the Fund to redeem its auction rate preferred stock ("ARPS") -- which was used to leverage the Fund and thereby provide a higher rate of return to the Fund's common shareholders -- and replace it with purportedly less favorable debt financing.  Plaintiff asserts state law claims for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty and unjust enrichment.

Plaintiff asserts that this Court has jurisdiction to hear his state law claims pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C § 1332(d)(2)(A).  CAFA provides for federal diversity jurisdiction for certain types of class actions, but expressly excludes:  (A) claims concerning "covered securities"; (B) claims which arise under state law relating to the internal affairs and governance of a business enterprise; and (C) claims involving rights and duties (including fiduciary duties) relating to the business' securities.

All of those exclusions apply here.  First, the Fund is a registered investment company, and thus the common and preferred shares that it issues are "covered securities."  Second, Plaintiff's claim that the Fund improperly redeemed the ARPS relates directly to the Fund's internal affairs and governance concerning the type of financial leverage it uses.  Third, Plaintiff complains that the redemptions occurred to placate the Fund's investment banks and brokers, despite the fact that

the Fund had no obligation to do so, thus benefitting the preferred shareholders at the expense of the common shareholders.  Such claims involve the rights and fiduciary duties surrounding those common and preferred securities.  Plaintiff's sole basis for federal jurisdiction therefore fails.

Separate and apart from the lack of federal jurisdiction, Plaintiff's claims should be dismissed because they are derivative claims that must be brought, if at all, on behalf of the Fund, rather than direct claims that may be brought as a class action.  Plaintiff does not allege that he or the class suffered any injuries separate and distinct from those allegedly suffered by the Fund. Plaintiff's claims therefore are derivative, and consistent with the fundamental principle that the Board -- rather than any shareholder -- controls the decision whether to initiate litigation on behalf of the Fund, governing Massachusetts law requires Plaintiff to bring a pre-suit demand on the Board of Trustees prior to commencement of any derivative action.  Plaintiff has failed to make such a demand, thereby requiring dismissal of his Complaint.

## STATEMENT OF PLAINTIFF'S ALLEGATIONS

### A.      The Parties

According to the Complaint, Plaintiff Richard Manuszak "invested" in the Fund on January 28, 2005.[1]  It is not clear whether he currently owns Fund shares.  The Fund is a Massachusetts business trust and a closed-end management investment company registered with the Securities and Exchange Commission under the Investment Company Act of 1940 ("ICA").[2]  The Fund's investment objective is to provide a high level of after-tax total return.[3]  Its investment adviser is EVM, which is an affiliate of Defendant Eaton Vance Corporation ("EVC").

---

[1]      Compl. ¶ 5.

[2]      Compl. ¶¶ 7(c), 13.

[3]      Compl. ¶ 14.

The Fund's Board (the "Board") currently consists of nine trustees.[4]  The eight Independent Trustees (Benjamin C. Esty, Allen R. Freedman, William H. Park, Ronald A. Pearlman, Heidi L. Steiger, Lynn A. Stout, Ralph F. Verni and Helen Frame Peters) have no affiliation with EVM or EVC and are therefore considered "not interested" within the meaning of the ICA, 15 U.S.C. § 80a-2(a)(19).[5]  The ninth Trustee, Thomas Faust, is affiliated with EVM.[6]

### B.    Plaintiff's Allegations

The Complaint focuses on the Board's decision in 2008 to redeem the Fund's ARPS.  The ARPS paid a dividend rate that would be reset periodically through an auction process.[7]  The ARPS were used as financial leverage to enhance the return to the Fund's common shareholders. The Fund would pay ARPS holders based upon prevailing short-term interest rates, and invest the proceeds from the sales of the ARPS in longer-term securities that, under market conditions that prevailed until February 2008, were expected to generate returns that exceeded the cost of the ARPS.[8]  The Complaint states that the ARPS "represented quite favorable financing for the Fund" because, among other things, the interest rates and other costs were favorable and the financing was perpetual.[9]

---

[4]    As acknowledged in the Complaint, Norton H. Reamer is a former Trustee.  (Compl. ¶6(b).)  He retired effective July 1, 2008, in accordance with the Board's retirement policy.

[5]    *See* Compl. ¶ 20.  Helen Frame Peters was initially named as a defendant, but on August 4, 2010 Plaintiff voluntarily dismissed his claims against her.  *See* Docket No. 9.

[6]    Compl. ¶ 20.  The Complaint also names "John and Jane Doe Defendants 1-100, individuals who aided and abetted the named Defendants in undertaking the violations alleged herein, the identities of whom are unknown to Plaintiff at this time."  (Compl. ¶ 6(k).)

[7]    *See* Compl. ¶¶ 2, 15.

[8]    *See* Compl. ¶ 17.

[9]    Compl. ¶ 16.

Since February 13, 2008, ARPS auctions have consistently failed, effectively rendering the ARPS illiquid.[10]  If the auction fails, then the ARPS' dividend rate is set by formula.[11]  This formula calls for a maximum rate or "penalty rate" based upon the prevailing LIBOR rate that is much higher than the rates ARPS holders received before February 2008.[12]  Nevertheless, according to the Complaint, the ARPS "continued to benefit the Fund after the failure of the auctions."[13]  The Complaint alleges that during 2008, the Trustees caused the Fund to redeem the ARPS and replace them with "less favorable" debt financing, which "would be more costly for the Fund" and "had a profound and permanent negative impact on the Fund."[14]  In addition, Plaintiff complains that Defendants "caused the Fund to pay the full issue price" for the ARPS that it redeemed, which price "exceeded their market value."[15]

Plaintiff alleges that these facts give rise to three claims:  (1) breach of fiduciary duty by the Trustees; (2) aiding and abetting breach of fiduciary duty by EVM and EVC; and (3) unjust enrichment by EVM and EVC through their receipt of fees from the financing that replaced the ARPS.[16]

---

[10]   Compl. ¶ 26.

[11]   *See* Compl. ¶ 15.

[12]   Information about the Fund's maximum penalty rate is contained in the Fund's by-laws which are publicly filed documents that can be provided to the Court upon request.  The LIBOR rates and the rates paid by the Fund on the ARPS also are publicly available information that can be provided upon request.  This Court can take judicial notice of such public information on a motion to dismiss.  *See, e.g., Doucot v. IDS Scheer, Inc.,* 2010 WL 3191771, at *7 n.8 (D. Mass. Aug. 10, 2010) (on a Rule 12(b)(6) motion to dismiss, "this court may also take judicial notice of information in the public record to which there is no objection as to its authenticity").

[13]   Compl. ¶ 29.

[14]   Compl. ¶ 33(a), (c).

[15]   Compl. ¶ 32 (as corrected; *see* Docket No. 8.)

[16]   Compl. ¶¶ 41-61.

## ARGUMENT

## I.

## THERE IS NO FEDERAL JURISDICTION OVER PLAINTIFF'S CLAIMS

Plaintiff's sole basis for bringing this lawsuit in federal court is diversity jurisdiction.[17]

Plaintiff alleges that this Court has jurisdiction over his putative class action pursuant to CAFA, 28

U.S.C. § 1332(d)(2)(A), because the "matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs and this is a class action in which a member of a class

of plaintiffs is a citizen of a State different from a defendant."[18]  However, 28 U.S.C. § 1332(d)(9)

carves out three exceptions to this diversity jurisdiction, as follows:

> [Jurisdiction under 28 U.S.C. § 1332] shall not apply to any class action that solely
> involves a claim—
>
>> (A) concerning a covered security as defined under [section] 16(f)(3) of the
>> Securities Act of 1933 (15 U.S.C. § 78p(f)(3)) and section 28(f)(5)(E) of the
>> Securities Exchange Act of 1934 (15 U.S.C. § 78bb(f)(5)(E));
>>
>> (B) that relates to the internal affairs or governance of a corporation or other form
>> of business enterprise and that arises under or by virtue of the laws of the State in
>> which such corporation or business enterprise is incorporated or organized; or
>>
>> (C) that relates to the rights, duties (including fiduciary duties), and obligations
>> relating to or created by or pursuant to any security (as defined under section
>> 2(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77b(a)(1)) and the regulations
>> issued thereunder).[19]

As discussed below, all three of these exceptions apply to Plaintiff's Complaint and

preclude this Court from exercising diversity jurisdiction over this action.

---

[17]   Because Plaintiff only brings state law claims for breach of fiduciary duty, aiding and abetting, and
unjust enrichment, there is no basis for federal question jurisdiction here, nor does Plaintiff allege any.

[18]   Compl. ¶ 9.

[19]   28 U.S.C. § 1332(d)(9); *see also* 28 U.S.C. § 1453(d) (setting forth same exceptions regarding removal
of class actions).

A.     **Plaintiff's Claims About the Fund's Common Shares and ARPS Concern "Covered Securities"**

CAFA jurisdiction does not extend to claims "concerning a covered security," as defined under Section 28(f)(5)(E) of the Securities Exchange Act of 1934 ("1934 Act").[20]  Section 28(f)(5)(E) defines "covered security" as follows:

> [A] security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933 [15 U.S.C.A. § 77r(b)], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 [15 U.S.C.A. § 77a et seq.] pursuant to rules issued by the Commission under section 4(2) of that Act [15 U.S.C.A. § 77d(2) ].[21]

In turn, Section 18(b) of the 1933 Act defines "covered security" as including "a security issued by an investment company that is registered, or that has filed a registration statement, under the [ICA]."[22]

Here, Plaintiff's entire Complaint arises from Defendants' redemption of the Fund's auction rate preferred securities, which allegedly harmed the Fund's common shareholders.[23] Because the Fund is a registered investment company under the ICA, both the common and

---

20    *See* 28 U.S.C. § 1332(d)(9)(A) (referencing section 16(f)(3) of the Securities Act of 1933 ("1933 Act")) (15 U.S.C. § 78p(f)(3)) and Section 28(f)(5)(E) of the 1934 Act (15 U.S.C. § 78bb(f)(5)(E)).  The reference to 15 U.S.C. § 78p(f)(3) likely is a drafting error in the statute. The statutory reference probably should have been to 15 U.S.C. § 77p(f)(3), which is substantially identical to 15 U.S.C. § 78bb(f)(5)(E).  *See Kurz v. Fidelity Management & Research Co.*, 2007 WL 2746612, at *3 n.2 (S.D. Ill. Sept. 18, 2007).

21    15 U.S.C. § 78bb(f)(5)(E).

22    15 U.S.C. § 77r(b)(2).

23    *See, e.g.,* Compl. ¶ 3.

preferred shares that it issued are within Section 18(b)'s definition of "covered securities."[24]

CAFA therefore expressly carves out diversity jurisdiction over this action.

### B.    Plaintiff's Claims Relate to the Internal Affairs and Governance of the Fund

Another carve-out under Section 1332(d)(9) precludes diversity jurisdiction over the claims

that "relate[] to the internal affairs or governance of a corporation or other form of business

enterprise and … arise[] under or by virtue of the laws of the State in which such corporation or

business enterprise is incorporated or organized."[25]   As one court explained,

> According to CAFA's legislative history, "the phrase 'the internal affairs or governance of a corporation or other form of business enterprise' is intended to refer to the internal affairs doctrine defined by the U.S. Supreme Court as 'matters peculiar to the relationships among or between the corporation and its current officers, directors and shareholders.'" *See* S. Rep. 109-14 at 45 (*citing Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S. Ct. 2629, 73 L. Ed. 2d 269 (1982)). The phrase "other form of business enterprise" is "intended to include forms of business entities other than corporations, including, but not limited to, limited liability companies, <u>business trusts,</u> partnerships and limited partnerships. *See id.*  The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs-matters peculiar to the relationships among or between the corporation and its current officials, directors, and shareholders-because otherwise a corporation could be faced with conflicting demands. *Edgar*, 457 U.S. at 645.

*In re Textainer Partnership Sec. Litig.,* 2005 WL 1791559, at *4 (N.D. Cal. July 25, 2007)

(emphasis added).[26]

---

[24]    *See, e.g., Instituto de Prevision Militar v. Merrill Lynch,* 546 F.3d 1340, 1351 n.2 (11th Cir. 2008) (noting that because mutual funds are issued by investment companies under the ICA, they qualify as "covered securities" under Section 18(b)).

[25]    28 U.S.C. § 1332(d)(9)(B).

[26]    In addition, the *Textainer* court noted that the Delaware Supreme Court, in *McDermott Inc. v. Lewis,* 531 A.2d 206 (Del. 1987), has defined "internal affairs" to mean:

> those matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.  It is essential to distinguish between acts which can be performed by both corporations and individuals, and those activities which are peculiar to the

In *Textainer*, the plaintiffs brought a class action on behalf of holders of limited partnership units, asserting a breach of fiduciary duty claim arising from a proposed sale of the partnership's assets negotiated by the general partners.  The court held that such claim "relates exclusively to the 'internal affairs or governance' of the Textainer partnerships" and thus came within Section 1332(d)(9)(B)'s carve-out:

> As noted above, plaintiff alleges that defendants, in their role as general partners of the Textainer partnerships, (1) rendered the sale of the assets of the partnerships "fundamentally unfair" to the limited partners by demanding that all potential bidders agree to enter into a management contract with one of the defendants, (2) rendered the sale "fundamentally unfair" to the limited partners by undervaluing Textainer's assets, and (3) gained support for the sale by distributing materially misleading proxy statements to the limited partners.  Each of these alleged acts affects plaintiff and the other limited partners solely in their capacity as limited partners of the Textainer partnerships . . . [and] the fiduciary duties allegedly breached arise solely because of the parties' relationship as partners of the Textainer partnerships.

*Id.* at *5.

Similarly, in *Brady v. Denton County Electric Cooperative, Inc*., 2009 WL 3151177 (E.D. Tex. Sept. 28, 2009), the plaintiffs alleged that certain policies of a cooperative affecting their membership rights were in violation of Texas state law, and brought claims for breach of fiduciary duty, breach of contract, conversion and improper use of plaintiffs' property.  The court interpreted the "other form of business enterprise" language of Section 1332(d)(9)(B) to encompass a cooperative.  *Id.* at *5.  It also cited the same legislative history from CAFA discussed in *Textainer* in holding that "[e]ach of Plaintiffs' claims necessarily turn on questions which 'relate to' the

---

corporate entity.  Corporations and individuals alike enter into contracts, commit torts, and deal in personal or real property ... The internal affairs doctrine has no applicability in these situations. Rather, this doctrine governs the choice of law determinations involving ... those activities concerning the relationships inter se of the corporation, its directors, officers, and shareholders.

*Textainer,* 2005 WL 1791559, at *5 (quoting *McDermott*, 531 A.2d at 214-15).

internal affairs of the corporation and 'arise under' the laws of Texas, thereby invoking the internal affairs exception to CAFA" and precluding the exercise of diversity jurisdiction.  *Id.*

Plaintiff's claims here likewise fit squarely within Section 1332(d)(9)(B)'s carve-out.  The Fund is a Massachusetts business trust, and the Complaint brings claims under Massachusetts law.[27]  Moreover, Plaintiff's claims alleging improper redemption of the Fund's ARPS in detriment to the Fund's common shareholders relate directly to the Fund's internal affairs and governance concerning the type of financial leverage that the Fund should use.[28]  For this reason as well, this Court lacks diversity jurisdiction over Plaintiff's claims.

### C.     Plaintiff's Claims Involve Rights and Duties Relating to the Fund's Securities

A third, and equally compelling, reason why the Complaint does not give rise to federal jurisdiction is that Section 1332(d)(9)(C) precludes jurisdiction over "any class action that solely involves a claim . . . that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security."[29]  Where -- as here -- a plaintiff "relies entirely on his ownership" of stock in a company, and "alleges no interest that would allow him to pursue this case other than his stock ownership . . . .  his claim 'relates to' or is 'pursuant to' a security" and is carved out from diversity jurisdiction under Section 1332(d)(9)(C).  *Carmona v. Bryant*, 2006 WL 1043987, at *2 (D. Idaho Apr. 19, 2006) (remanding shareholder's class action based on directors' breach of fiduciary duty in approving sale of company because no diversity jurisdiction existed).

---

[27]     *Textainer,* 2005 WL 1791559, at *4 (Section 1332(d)(9)(B) includes business trusts); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010) (recognizing that the use of the term "business enterprise" in Section 1332(d)(9)(B) signals Congress' intent to apply this exception to "*all* business forms") (emphasis in original).  *See* Compl. ¶¶ 7(c), 55.

[28]     Compl. ¶¶ 3, 17.

[29]     28 U.S.C. § 1332(d)(9)(C).

In *Genton v. Vestin Realty Mortgage II, Inc.*, 2007 WL 951838, at *3 (S.D. Cal. Mar. 9, 2007), the court cited *Carmona* and applied Section 1332(d)(9)(C) because the plaintiffs' claims for breach of contract and breach of implied covenant of good faith and fair dealing "arise directly from [the company's] alleged failure to pay Plaintiffs their pro rata share as security owners" in the company after a merger.  Diversity jurisdiction also was precluded under Section 1332(d)(9)(C) in *Williams v. Texas Commerce Trust Co. of New York*, 2006 WL 1696681, at *1 (W.D. Mo. June 15, 2006), where the plaintiff debenture holders asserted claims for breach of fiduciary duty, breach of contract, negligence, equitable restitution and other claims against the trust indenture's trustee stemming from a merger.   The court in *Williams* found that while the trust indenture itself was not a security, it was a "necessary document" to the issuance of the debentures and specified their terms and conditions, and thus "the trust indenture is 'related to' the securities at issue." *Id.* at *5.

Plaintiff's claims in this action similarly involve rights and duties relating to the Fund's securities.  Plaintiff alleges that "a key piece of the return to the Fund's common shareholders was financial leverage," and that Defendants' replacement of the Fund's ARPS with less favorable debt financing "had a profound and permanent negative impact on the Fund." [30]  Plaintiff also complains that the ARPS were redeemed to placate the Fund's investment banks and brokers, despite the fact that the Fund had no obligation to do so.[31]  According to Plaintiff, such actions benefitted the ARPS holders at the expense of the common shareholders, thus breaching Defendants' fiduciary duties and unjustly enriching EVM and EVC through fees and other revenues directly resulting from those breaches.[32]  Because this action relates to "the rights, duties

---

[30]   Compl. ¶¶ 17, 33(c).

[31]   Compl. ¶¶ 30, 34.

[32]   *See, e.g.,* Compl. ¶¶ 43, 51, 57.  As noted in *Genton*, any contention that Section 1332(d)(9)(C) covers fiduciary duty claims only is "too narrow," since the statute's plain language "shows a clear intent to cover fiduciary duty claims *in* addition to other claims."  2007 WL 951838, at *3 (emphasis in

(including fiduciary duties), and obligations relating to or created by or pursuant to any security," it is carved out from diversity jurisdiction pursuant to Section 1332(d)(9)(C).

In conclusion, all three of the exceptions to CAFA's jurisdictional provisions apply to Plaintiff's claims here, mandating dismissal of his Complaint for lack of federal jurisdiction.

## II.

### PLAINTIFF'S CLAIMS MUST BE BROUGHT DERIVATIVELY ON BEHALF OF THE FUND, RATHER THAN DIRECTLY

Even if this Court had diversity jurisdiction over Plaintiff's claims (which it does not), the Complaint still should be dismissed because Plaintiff improperly brings his claims as direct claims on behalf of a putative class of common shareholders in the Fund rather than derivatively on behalf of the Fund. Plaintiff's breach of fiduciary duty, aiding and abetting, and unjust enrichment claims do not allege any injuries to Plaintiff distinct from those allegedly suffered by the Fund. Plaintff therefore must bring his claims derivatively on behalf of the Fund, and Plaintiff must make a demand upon the Board before bringing suit. His failure to do so requires dismissal of the Complaint.

### A.     Under Massachusetts Law, Direct Claims Are Limited to Injuries Distinct from the Corporation

The Court can determine whether a suit is properly derivative or direct from the face of the complaint. *See, e.g., Stegall v. Ladner*, 394 F. Supp. 2d 358, 364 (D. Mass. 2005) (determining that direct action should have been brought derivatively based on the complaint's allegations); *see also Olesh v. Dreyfus Corp.*, 1995 WL 500491, at *6 (E.D.N.Y. Aug. 8, 1995). The law of the state where the fund is incorporated controls whether a shareholder's claim should be brought

---

original). *See also Williams*, 2006 WL 1696681, at *4 (rejecting the argument that only breach of fiduciary duty claims are carved out under Section 1332(d)(9)(C), but instead finding that it lacked diversity jurisdiction "over the multiple state law claims asserted by the Plaintiffs" including breach of contract and negligence).

derivatively or directly.  *Stegall*, 394 F. Supp. 2d at 364; *accord In re Franklin Mutual Funds Fee Litig.*, 388 F. Supp. 2d 451, 463 (D.N.J. 2005).

Here, the Fund is a Massachusetts business trust.[33]  Under Massachusetts law, "[t]o determine whether a claim belongs to the corporation, a court must inquire whether the shareholder's injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock," or, in this case, the Fund.  *Stegall,* 394 F. Supp. 2d at 364 (quoting *Green,* 186 F.R.D. at 489).  *See also Franklin*, 388 F. Supp. 2d at 463 (a plaintiff can only bring a direct claim under Massachusetts law if he has "suffered an injury distinct from the injury suffered by the corporation"); *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 233 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (under Massachusetts law, the court determines "whether the plaintiff has alleged an injury distinct from that suffered by shareholders generally") (internal quotations and citation omitted).

Generally, allegations of "mismanagement or wrongdoing on the part of corporate officers or directors normally state[] a claim of wrong to the corporation:  the action, therefore, is properly derivative."  *Jackson v. Stuhlfire*, 28 Mass. App. Ct. 924, 925, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990) (quoting Smith & Zobel, *Massachusetts Rules Practice* § 23.1.1 (1975)).  Thus, "[i]f the wrong underlying the claim adversely affects the plaintiffs 'merely as they are the owners of the corporate stock,' then the injury to the shareholder is considered indirect, and the suit must be brought as a derivative action because 'only the corporation itself suffers the direct wrong.'"  *Eaton Vance*, 380 F. Supp. 2d at 234 (quoting *Jackson*, 547 N.E.2d at 1148).  Specifically, allegations by a shareholder of "mismanagement of funds, embezzlement or *breach of fiduciary*

---

[33]    Compl. ¶ 7.  Courts applying Massachusetts law to shareholder suits against Massachusetts business trusts "have uniformly required the shareholder to follow Massachusetts law regarding derivative suits."  *Green v. Nuveen Advisory Corp.,* 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999).

*duty resulting in a diminution of the value of the corporate stock or assets*" are derivative, not

direct. *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996) (emphasis added).

Courts applying Massachusetts law therefore dismiss claims by fund shareholders for

failure to bring them derivatively where the shareholder has not sustained any injury distinct from

that suffered by the fund.  For example, in *Green*, 186 F.R.D. at 489-90, the plaintiffs brought a

class action on behalf of themselves and other holders of common stock in various closed-end

funds, asserting direct breach of fiduciary duty claims against the funds' investment adviser.  The

closed-end funds issued auction preferred shares as leverage to increase the yield paid to common

shareholders.  The plaintiffs alleged that adviser's compensation agreements with the funds created

a conflict of interest, because the funds had an incentive to keep the funds fully leveraged to

increase their advisory fees, even if doing so would not be in the common shareholders' best

interest. *Id.* at 488.

The court rejected the plaintiffs' attempts to bring their claims directly, holding that "[t]he

complaint does not allege that the Funds' [actions] caused the plaintiffs to suffer an injury distinct

from any other common shareholder in the Funds." *Id*. at 489.  The court noted that the plaintiffs

alleged that "*all* of the common shareholders sustained the same injuries as a result of the

compensation scheme," and "[t]he existence of preferred shares, standing alone, does not render

the common shareholders' injuries distinct from the Funds' injuries." *Id*. at 490 (emphasis in

original).  Rather, "[d]iminution in value of the common stock due to advisory fees paid by the

Funds is an injury to the Funds, and any harm to the plaintiffs as common shareholders is

derivative in nature." *Id.* at 490.[34]  *See also* 12B William M. Fletcher, *Fletcher Cyclopedia of*

---

[34]    While much of the court's discussion in *Green* focused on the purported breach of fiduciary duty claim
under Section 36(a) of the ICA, the court also dismissed the common law breach of fiduciary duty
claims for the same reason. *Id.* at 493.

*Corporations* § 5915 (perm. ed. 1993) ("If the cause of action is based on unlawful acts… related to the capital stock as an entirety, *or a particular class of stock*, it is ordinarily a corporate cause of action and cannot be the basis for an action by a shareholder merely as an individual.") (emphasis added).

In *Stegall*, 394 F. Supp. 2d at 364, this Court relied on *Green* in dismissing a fund shareholder's breach of fiduciary duty claims for failure to bring them derivatively.  The plaintiffs in *Stegall* asserted that the fund's directors and investment adviser failed to ensure that the fund participated in securities class actions in which the fund was a putative member.  Judge Woodlock held that "[t]he alleged injury here is not distinct and, therefore, cannot be brought in its present, direct form," since the allegations "relate to a diminution in the total assets of the Funds and only derivatively did this injury harm each shareholder." *Id.*  As in *Green*, Judge Woodlock rejected the argument that the plaintiff's injury was unique and could be brought directly. *Id.* at 364-66. Rather, for duties owed to the fund, "[p]laintiff enjoys the benefits of that duty, but does so derivatively.  Consequently, he is empowered to enforce that duty, but must do so on behalf of the fund after providing the fund an opportunity to take action on its own behalf." *Id.* at 366.

Other courts similarly applied Massachusetts law and held that breach of fiduciary duty and unjust enrichment claims must be brought derivatively on the fund's behalf, rather than a direct class action by the fund's shareholders. *See, e.g., Eaton Vance*, 380 F. Supp. 2d at 234 (allegedly improper use of fund assets to compensate brokers was "an injury to the Eaton Vance Funds that adversely affect[ed] the plaintiffs only indirectly through their status as investors" and therefore "[t]he plaintiffs [were] damaged indirectly because the assets of the Funds [were] reduced"); *Franklin*, 388 F. Supp. 2d at 464 (because the allegedly excessive fees and charges paid by the

14

funds "reduced the net asset value of the funds and, in turn, reduced the net asset per share value, the plaintiffs did not sustain an injury distinct from that suffered by the funds").

### B.  Plaintiff's Claims Here Do Not Allege Any Injuries Distinct From the Fund

Here, as in *Green, Stegall, Franklin* and *Eaton Vance*, Massachusetts law similarly requires dismissal of Plaintiff's breach of fiduciary duty and unjust enrichment claims for failure to bring them derivatively.  The Complaint does not plead any facts showing that Plaintiff and the putative class of common shareholders suffered any injuries that are distinct from those of the Fund. Rather, those injuries allegedly arise because redemption of the ARPS at their full issue price and the replacement financing purportedly harmed ***the Fund***.  For example, Plaintiff alleges the following:

- "The ARPS issued by the Fund represented quite favorable financing for *the Fund*" (Compl. ¶ 16, emphasis added);

- "The favorable characteristics of the ARPS . . . continued to benefit *the Fund* after the failure of the auctions . . ." (*id.* ¶ 29, emphasis added);

- Defendants "caused *the Fund* to pay the full issue price" for the ARPS that it redeemed which "exceeded their market value" (*id.* ¶ 32, as corrected, emphasis added);

- The new debt financing ("Replacement Borrowing") to raise cash for redemption of the ARPS was "more costly for *the Fund*" (*id.* ¶ 33(a), emphasis added);

- The Replacement Borrowing's "short-term maturity creates significant refinancing risk for *the Fund*" (*id.* ¶ 33(b), emphasis added);

- *"[T]he Fund* was required to pledge its assets as collateral for the Replacement Borrowing," and the increased coverage ratio from the Replacement Borrowing "had a profound and permanent negative impact on *the Fund*" which "permanently constricted *the Fund's* economic potential" and "exposed *the Fund* to . . . unnecessary risk of a forced deleveraging" (*id.* ¶ 33(c), emphasis added).

As a result of these actions, Plaintiff claims that the Trustees breached their fiduciary duty to "not to engage in conduct that frustrates the ability of the common shareholders to realize the

benefits of an investment in *the Fund*."[35]  The Complaint further alleges that EVM and EVC have been unjustly enriched by receiving "substantial fees from *the Fund* in connection with the Replacement Borrowing," which has caused "the injury to their investment in *the Fund*."[36]

Since the allegations "relate to a diminution in the total assets of the Funds and only derivatively did this injury harm each shareholder," none of the injuries alleged by Plaintiff are distinct from those of the Fund.  *Stegall*, 394 F. Supp. 2d at 364.  Plaintiff's claims must be brought derivatively on behalf of the Fund and cannot be maintained as direct claims.

### C.  Plaintiff's Complaint Should Be Dismissed For Failure To Make A Demand On The Fund's Board

In addition to failing to bring his claims derivatively rather than directly, Plaintiff also failed to satisfy the necessary prerequisites for bringing a derivative claim by making a pre-suit demand on the Fund's Board of Trustees, in violation of Rule 23.1 of the Federal Rules of Civil Procedure and Massachusetts law.

Since the Fund is a Massachusetts business trust, Plaintiff's Complaint must comply with Massachusetts law to determine the substantive requirements for making a pre-lawsuit demand. *Gonzalez Turul v. Rogatol Distributors, Inc.*, 951 F.2d 1, 2 (1st Cir. 1991) ("[t]he substantive requirements of demand are a matter of state law").  A "basic principle of corporate governance" under Massachusetts law (as in many other states) is that "the board of directors . . . should set the corporation's business policy, including the decision whether to pursue a lawsuit."  *Harhen v. Brown*, 431 Mass. 838, 844-48, 730 N.E.2d 859, 865-868 (Mass. 2000).

In 2004, the Massachusetts Legislature codified and strengthened this principle by enacting the Massachusetts Business Corporation Act, G.L. c. 156D (the "MBCA").  Under the MBCA,

---

[35]  Compl. ¶ 42 (emphasis added).

[36]  Compl. ¶¶ 57-58 (emphasis added).

demand is universally required prior to the commencement of all derivative proceedings.  Section 7.42 of the MBCA states that "[n]o shareholder may commence a derivative proceeding until… a written demand has been made upon the corporation to take suitable action…."[37]  "There are no exceptions" to this demand requirement.  *ING*, 369 F. Supp. 2d at 170.  *See also Johnston v. Box*, 453 Mass. 569, 578 n.15, 903 N.E.2d 1115, 1123 n. 15 (Mass. 2009) ("in Massachusetts, there is no longer a futility exception to the demand requirement, even if the board members are not independent and disinterested.") (citing *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 110 n. 13 (D. Mass. 2006)).

Failure to comply with the pre-suit demand requirement mandates dismissal of the Complaint.  For example, in *Stegall,* Judge Woodlock dismissed plaintiffs' breach of fiduciary claims after noting that plaintiffs not only failed to bring those claims derivatively, they also "made no demand on the defendants."  394 F. Supp. 2d at 367.  *See also Yameen v. Eaton Vance Distributors, Inc.*, 394 F. Supp. 2d 350, 352 n.1 (D. Mass. 2005) (citing plaintiffs' failure to make a demand when dismissing their breach of fiduciary duty claims); *ING Principal Protection Funds*, 369 F. Supp. 2d at 171 (same).  Thus, the application of the Massachusetts demand requirements for derivative actions requires the dismissal of Plaintiff's Complaint here.

Because Plaintiff failed to make the required demand under Massachusetts law, the Complaint fails to comply with Rule 23.1 of the Federal Rules of Civil Procedure.  Rule 23.1 states that the complaint must "state with particularity" the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors and "*the reasons for not obtaining the action or*

---

[37]   Mass. Gen. Laws, ch. 156D, § 7.42.  Chapter 156D, by its terms, applies to business corporations.  Although no Massachusetts state court has yet decided the issue, this Court has held that those requirements also apply to business trusts organized under Mass. Gen. Laws ch. 182.  *See ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 171 (D. Mass. 2005) (a business trust "in practical effect is in many respects similar to a corporation," and therefore universal demand requirement of ch. 156D applies to business trusts) (citation and internal quotation marks omitted); *Stegall*, 394 F. Supp. 2d at 367 (same).

*not making the effort*." Fed. R. Civ. P. 23.1 (emphasis added).  The United States Supreme Court has explained that Rule 23.1 is grounded in "the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors."  *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984).  This "'demand requirement' affords the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'"  *Id*. at 533 (citation omitted).  Plaintiff's attempts to deprive the Fund of the right to have the Board determine its affairs in the exercise of its reasonable business judgment should be rejected, and the Complaint dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

Dated:  August 20, 2010                     Respectfully submitted,


                                            GOODWIN PROCTER LLP


                                            /s/ Stuart M. Glass
                                            Stuart M. Glass (BBO #641466)
                                            Stacey B. Ardini (BBO #663161)
                                            53 State Street
                                            Boston, MA 02109
                                            Tel: (617) 570-1000
                                            Fax: (617) 523-1231
                                            sglass@goodwinprocter.com
                                            sardini@goodwinprocter.com


                                            Mark Holland
                                            Mary K. Dulka
                                            Erin M. Eckhoff
                                            The New York Times Building
                                            620 Eighth Avenue
                                            New York, NY  10018
                                            Telephone:  (212) 813-8800
                                            Fax:  (212) 355-3333

                                            mholland@goodwinprocter.com
                                            mdulka@goodwinprocter.com
                                            eeckhoff@goodwinprocter.com

                                            *Attorneys for the Independent Trustee Defendants and
                                            the Fund*

**CERTIFICATE OF SERVICE**

I, Stuart M. Glass, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 20, 2010.

/s/ Stuart M. Glass
Stuart M. Glass

20